IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

TERESA G. PATRICK

VS.                                                          CIVIL ACTION NO. 2:10CV140-DAS

WAL-MART, INC. – STORE NO. 155 and
NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendants to dismiss the action (# 20). Also before the court is the defendants' motion to dismiss the second amended complaint (# 34). In accordance with the provisions of 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of final judgment on any or all of the plaintiff's claims. After considering each of the motions, the court finds as follows:

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On July 28, 1997, the plaintiff injured her back while working as a stocker for Wal-Mart. Wal-Mart's workers' compensation carrier, National Union Fire Insurance Company, initially denied coverage. On July 30, 1998, the plaintiff filed her Petition to Controvert, and on August 24, 1998, Administrative Law Judge Linda Thompson held an evidentiary hearing. On September 14, 1999, Judge Thompson entered a decision, finding that the plaintiff "received a work-related injury . . . as alleged in the petition to controvert, as amended." Judge Thompson then ordered the carrier to pay benefits "at the rate of $187.01 per week beginning July 8, 1998, and continuing until June 9, 1999 . . . ." Finally, Judge Thompson held "that a determination

1

about permanent occupational disability or loss of wage-earning capacity, if any, will be reserved until a later time." Neither party appealed this decision, and the carrier paid as ordered.

Approximately six years later, on July 14, 2005, Administrative Law Judge Tammy Harthcock held a second evidentiary hearing and found the plaintiff totally and permanently disabled. Judge Harthcock ordered benefits of $187.01 per month, beginning July 28, 1997 and continuing for 450 weeks. The defendants appealed this decision, and eventually – after decisions made by the Workers' Compensation Commission and the Tate County Circuit Court – the Mississippi Court of Appeals affirmed the ALJ's decision that the plaintiff was totally and permanently disabled.[1] The court of appeals entered their decision on July 1, 2008 and denied a rehearing on December 16, 2008. The Mississippi Supreme Court denied certiorari on April 6, 2009. On July 9, 2010, the plaintiff filed the present action in the Tate County Circuit Court, arguing the decision to deny coverage in 1997 was made in bad faith, and on August 18, 2010, the defendants removed the action to this court.

The defendants now move to dismiss the present action, arguing that the three-year statute of limitations began running after Judge Thompson's decision in 1999, approximately eleven years before the plaintiff filed her complaint. After the defendants filed the motion to dismiss, the plaintiff filed a motion for leave to file a second amended complaint, and the court granted that motion. The defendants then moved to dismiss the second amended complaint, arguing essentially that the second amended complaint failed to meet the pleading requirements dictated by the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

---

[1]The court notes that the parties argued several other issues before the appellate courts, including whether two subsequent surgeries were to be paid by the carrier. These additional issues have no bearing on the issue presently before the court.

(2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-50 (2009).

## II. DISCUSSION

When the court considers a motion filed pursuant to Rul 12(b)(6) of the Federal Rules of Civil Procedure, it "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In Re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To overcome a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id* at 555.

Rule 12(d) provides that if on a motion under Rule 12(b)(6), matters outside the pleadings are considered by the court, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, there is no need to convert the matter to a motion for summary judgment when the matters considered include only the complaint and findings in a related administrative proceeding where the plaintiff had notice of the exhibit and the exhibit was integral to the plaintiff's claim. *See Novo Nordisk of North America, Inc. v. Genentech, Inc.*, 885 F. Supp. 522, 526 (S.D.N.Y. 1995) (citing *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Because the court considered only the complaint and the findings from the related administrative proceeding, it treats the present motions as motions to dismiss pursuant to Rule 12(b)(6).

### A. FIRST MOTION TO DISMISS – STATUTE OF LIMITATIONS

The defendants removed this action from the Tate County Circuit Court asserting

3

diversity jurisdiction. Because complete diversity exists, the court has subject matter jurisdiction, and Mississippi law is controlling on all substantive issues. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1934). The court, therefore, looks first to Mississippi's statutes of limitation. There is no statute of limitations designated specifically for a bad faith action. Consequently, the court looks to Mississippi's catch-all statute of limitations provided at § 15-1-49, which provides that an action must be brought within three years "after the cause of such action accrued." Miss. Code Ann. § 15-1-49 (Rev. 2003). According to the defendants, that period began to run on October 4, 1999 when Judge Thompson decided the plaintiff had received a work-related injury, and thus, the plaintiff had to file her action no later than October 4, 2002.[2] Because the plaintiff did not file the present action until July 9, 2010, the defendants argue she filed her claim almost eight years late. The plaintiff argues that because Judge Thompson's decision was not "final," the statute of limitations did not begin to run until April 30, 2009 when the court of appeals made its final decision. Both parties rely heavily on the Mississippi Supreme Court's decision, *Bullock v. AIU Ins. Co.*, 995 So. 2d 717 (Miss. 2008). The court also finds the *Bullock* decision extremely helpful.

In *Bullock*, the plaintiff sued his employer's workers' compensation carrier for bad faith after it denied coverage and the Administrative Law Judge found he was an insured and entitled to benefits. *Bullock*, 995 So. 2d at 719. The ALJ made that determination on October 12, 1999 but found only that the defendants were liable for payment under the Act. The ALJ made no finding as to any amount the defendants owed. *Id.* Regardless, the insurer paid all back benefits

---

[2]The court notes that Judge Thompson made her decision on September 14, 1999, but allowing twenty days to file a notice of appeal reaches to October 4.

and Bullock began receiving benefits. Neither party appealed that decision. Almost seven years later, a second hearing was held, and the ALJ awarded Bullock additional workers' compensation benefits. The commission approved this decision on May 25, 2004. Shortly thereafter, Bullock sued AIU for acting in bad faith, and the defendant removed the action to federal court. *Id.*[3] The defendant moved to dismiss the action, arguing that the three-year statute of limitations began to run following the October 12, 1999 decision, when the ALJ found Bullock was an insured.[4] The plaintiff argued the period did not begin to run until the May 2004 decision regarding his additional benefits.

The supreme court sided with Bullock. Specifically, the court considered the following certified question:

> Whether an order, issued in 1999, of a Mississippi Workers' Compensation Commission Administrative Law Judge which determines only that the named employer and compensation insurer are liable to the named employee for compensation benefits in respect to a particular on the job accidental injury, but does not determine the amount or duration of benefits to be paid or any other matter, becomes final if not appealed by any party to the commission within twenty days.

*Id.* at 720.

In other words, the court looked to determine whether the 1999 decision was "final" when the ALJ found liability but awarded no money. There was no dispute that the statute of

---

[3]The Mississippi Supreme Court's decision is actually an answer to a question certified to it from the United States Court of Appeals for the Fifth Circuit. 503 F.3d 384. The district court granted summary judgment, finding that the statute of limitations began to run in October 1999 when the ALJ made its initial determination.

[4]To be more precise, the defendant argued the statute began to run at the conclusion of the time in which a notice of appeal could be filed after the October 12 decision – November 1.

limitations for a bad faith claim begins to run when the decision concerning compensation is "final." *See, e.g., Harper v. Cal-Maine*, 43 So. 3d 401, 403 (Miss. 2010). The question was how precisely to define the term "final." Referring to abundant authority, the defendants in the present case argue that a decision is "final" once a claimant can establish that she is entitled to compensation benefits. *Bullock*, 995 So. 2d at 723; *Dial v. The Hartford Accident and Indem. Co.*, 863 F.2d 15, 17 (5th Cir. 1989). The court finds that common sense dictates such a principle. Certainly, a bad faith claim in a workers' compensation setting such as the present one may not be filed until the worker has shown he was entitled to benefits in the first place. It also follows that once there is nothing left that an insurer can do to alter such a finding, the statute would begin to run. Of course the *Bullock* court understood this, but courts are constrained not only by common sense but also by statute. The two may not always be synonymous. Consequently to determine what precisely is meant by "final," the court looked to the statute concerning hearings before an ALJ in workers' compensation matters. That statute provides:

> Informal conferences and hearings in contested cases may be conducted by a duly designated representative of the commission. Upon the conclusion of any such hearing, the commission's representative *shall make or deny an award*, and file the decision in the office of the commission. Immediately after such filing, a notice of decision shall be sent to all interested parties. This decision shall be sent to all interested parties. *This decision shall be final unless within twenty (20) days a request or petition for review by the full commission is filed.*

Miss. Code Ann. § 71-3-47 (Rev. 2000).

Therefore, the court found that whether a decision was final or not depended on whether an "award" had been made. *Bullock*, 995 So. 2d at 721. The next question, therefore, became – how precisely do we define the term "award." To answer this question, the court conducted an

6

exhaustive search of the Mississippi Code and its various uses of the term "award," and decided "that an 'award' refers to a final decision to grant or deny a specific amount of compensation." *Id*. at 722. Because the ALJ in *Bullock* found only liability and reserved ruling on the amount of compensation, the court found his decision was not final, and thus, the statute of limitations did not begin to run twenty days after his decision. *Id.* at 722-23.

Understanding all of this and looking to the present case, the court looks to when the parties were definitively made aware that National Union Fire Insurance Company was in error. That, of course, was twenty days after Judge Thompson's decision. Judge Thompson made her decision on September 14, 1999. Consequently, when neither party appealed that decision, common sense dictates that the statute of limitations for a bad faith action began to run on October 4, 1999. As noted, however, *Bullock* reminds us that in addition to common sense, the court must look to the statute, which also requires an "award" before the statute of limitations begins to run. *Id.* at 722. Here, the cases differ. Unlike *Bullock*, the ALJ in the present case did indeed make an award for a "specific amount of compensation." *Id.* The ALJ specifically ordered the carrier to pay benefits "at the rate of $187.01 per week beginning July 8, 1998, and continuing until June 9, 1999 . . . ."

The question before this court, therefore, is whether a *partial* award is an "award." Judge Thompson awarded benefits but withheld a determination as to "permanent occupational disability or loss of wage-earning capacity" for a "later time." We now know that decision was not made until 2005. The *Bullock* court does not address this issue directly. The *Bullock* court held only that compensation must be awarded before a decision may be considered final. Consequently, the court must make an *Erie* guess as to how the Mississippi courts would decide

the issue. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1934).

After considering the authorities presented, the court finds a decision that the statute of limitations began running on October 4, 1999 is consistent with the reasoning provided in the *Bullock* decision. There the court held only that *an* award must be made. *Bullock*, 995 So. 2d at 721. Moreover, there is no dispute that after October 4, 1999, there was nothing National Union Fire Insurance Company could do to alter the finding that it erred when it denied coverage. It only makes sense that the period would begin to run at that point. There was an award made, and that award was a specific amount of compensation. Although the amount was only a portion of what was to be awarded at a later date, the court finds that *any* monetary compensation meets the dictates set down by the supreme court in *Bullock*. Therefore, because a monetary award was made, this court is able to make a decision that is compatible with both the statute *and* common sense.

The court is aware that the *Bullock* court also held that "when substantial rights remain undetermined – and . . . specifically reserved for later action – [the court] construes the order to be interlocutory." *Bullock*, 995 So. 2d at 723. The court is also aware that Bullock's rights that "remained undetermined" concerned a monetary interest; therefore the court found it a "substantial right." *Id.* The plaintiff in the present action refers to this language and argues that because Judge Thompson reserved a determination about permanent occupational disability or loss of wage-earning capacity, her decision was interlocutory. The court does not agree. The court finds that because an award – monetary compensation – had been made, the remaining monetary award (however large) would not qualify as a substantial right as intended by the *Bullock* court. Had that been their intent, there would have been no reason to spend so much

8

time and effort trying to determine what precisely was an award.  There was never a dispute that Bullock had rights that remained undetermined.  If the court intended that issue alone to be determinative – as now argued by the plaintiff – there would be no need to consider whether the original ALJ's decision was final.  The court could simply have looked to see whether there were any undetermined rights at the time the defendant argued the statute of limitations began to run.  The court did not do this, however.  The court looked so hard to determine whether the original ALJ's decision was final because there could be a situation in which that decision was final *despite* the remaining rights.  The court found that such a situation would have existed had the original ALJ awarded any monetary benefits.  Because the original ALJ in the present action did award monetary benefits, her decision was "final," and the statute began to run on October 4, 1999.

Accordingly, the court finds that to pursue a bad faith cause of action against the defendants in this case, the plaintiff must have filed the action no later than October 4, 2002.  Because the plaintiff filed the action on July 9, 2010, the defendants' motion to dismiss is well taken.

## B.  SECOND MOTION TO DISMISS – TWOMBLY/IQBAL

On November 24, 2010, the defendants filed their first motion to dismiss the present action.  After they filed their motion, the plaintiff moved for leave to file a second amended complaint, and the court granted that motion.  The plaintiff very clearly filed the second amended complaint in response to the defendants' motion to dismiss.  As discussed extensively *supra*, the defendants' motion argued that the action should be dismissed because the three-year statute of limitations ran approximately eight years before the plaintiff filed it.  In her second amended

9

complaint, the only changes made were changes that addressed the issue of timing. Specifically, with her second amended complaint, the plaintiff added three phrases to count one, the tortious breach of contract claim (found at paragraph 14, sections a, d, and e); and a new paragraph to count three, the negligent and intentional infliction of emotional distress claim – paragraph 24. Each of these changes appears to be an attempt to allege a continuing pattern of bad faith on the part of the defendants. That is, with her initial complaint and her first amended complaint, the plaintiff never alleged any actions of the defendants that took place after 1999. Following the motion to dismiss, the plaintiff now alleges that at least something inappropriate continued after September 14, 1999.

The changes to paragraph 14 are as follows:

<u>Subsection (a)</u>

With her first amended complaint, the plaintiff alleged in paragraph 14(a) that the defendants "refused to provide and/or pay medical expenses incurred by Plaintiff . . . ." The change made in the second amended complaint provided that the defendants "refused *and continues to refuse* to provide and/ or pay medical expenses incurred by Plaintiff . . . ."

<u>Subsection (d)</u>

With her first amended complaint, the plaintiff alleged in paragraph 14(d) that the defendants "committed a willful and/or malicious wrong and/or acted with gross or reckless disregard for its beneficiaries' and employees' rights . . . ." The change made in the second amended complaint provided that the defendants "committed, *both before and after September 14, 1999 Order*, a willful and/or malicious wrong and/or acted with gross or reckless disregard for its beneficiaries' and employees' rights . . . ."

10

*Subsection (e)*

With her first amended complaint, the plaintiff alleged in paragraph 14(e) that the defendants acted in bad faith by "intentionally withholding said services and payments." The change made in the second amended complaint provided that the defendants acted in bad faith by "intentionally withholding said services and payments, *both before and subsequent to the September 14, 1999 Order of Administrative Judge.*"

The paragraph added to the negligent and intentional infliction of emotional distress claim provides:

> 24. Defendants have engaged in a continuing pattern of bad faith, even after the issuance and entry of Judge Linda Thompson's September 14, 1999 Order, and in fact the Defendants, have reasonable, necessary and worker's comp related medical treatment, as well as permanent indemnity benefits, as ordered by the Mississippi Workers' Compensation Commission and affirmed by the Mississippi Court of Appeals.

In response to these changes, the defendants filed a motion to dismiss the second amended complaint. In support of their motion, the defendants argue that the changes made to the second amended complaint fail to meet the pleading standards set forth in the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and further clarified in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-50 (2009). In *Iqbal*, the Supreme Court held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility

that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

As discussed *supra*, the court finds that any allegations made related to events that occurred before July 9, 2007 are barred by the statute of limitations. That is, unless the plaintiff could show some sort of continuing violation committed by the defendants. With that understanding in mind, the court looks to the language of the second amended complaint and the allegations related to events alleged to have occurred "subsequent to September 14, 1999." Looking to the newly added language in conjunction with the dictates provided by the *Iqbal* decision, the court finds the newly added language insufficient to support a claim. As the defendants point out, the language added to the new complaint provides only conclusory language with no factual content. Allegations that the defendants committed malicious wrongs "both before and after September 14, 1999" or that they "engaged in a continuing pattern of bad faith" are precisely the type allegations, the *Iqbal* court described as "merely consistent with" a defendant's liability. *Id.* None of the newly added language provides any factual basis for the allegations made. The plaintiff contends that the defendants failed to pay medical expenses, but there is nothing specific related either to the expenses themselves or when they were incurred.[5] To be sure, the *Iqbal* decision did not create a "probability requirement," but pleadings now must

---

[5]In response to the defendants' motion to dismiss the second amended complaint, the plaintiff asked: "In the event that this Court is inclined to grant Defendants' Motion, Plaintiff respectfully moves that she be allowed to amend her Complaint to state said facts with greater specificity . . . ." Such a response is inadequate. The complaint now before the court is the plaintiff's third attempt. The court will not continue to allow the plaintiff to amend her complaint to satisfy the pleading requirements that have been in place since before she filed her first one.

provide more than simply alleging the defendants acted in bad faith when they failed to pay medical expenses both before and after September 14, 1999.

Indeed, because the court finds the statute of limitations began to run on October 4, 1999 and because the plaintiff filed the present action on July 9, 2010, to show a continuing violation, the plaintiff necessarily must show some wrongful conduct that took place subsequent to July 9, 2007. There is nothing whatever in the second amended complaint that would allow the court to make that conclusion. Contending only that the defendant "continues to refuse to provide" medical expenses or that the defendants committed wrongful acts "after September 14, 1999" is simply not enough. *See, e.g., Atiyeh v. National Fire Ins. Co. of Hartford*, — F. Supp. 2d — , 2010 WL 3825708 (E.D. Pa. 2010). The rules now demand that a plaintiff must plead enough factual content to support at least a plausible claim. In this case, the plaintiff failed to do that.

Accordingly, because there are no facts before the court to establish continuing bad faith of the defendants, the court finds the second amended complaint does not meet the pleading standards described in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-50 (2009), and thus, the defendants' motion to dismiss the second amended complaint is well taken.

An order in accordance with this opinion will issue this day.

This the 21st day of March, 2011.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE